*915 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
_JjThis disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Kevin Lenn Hanchey, an attorney licensed to practice law in Louisiana but currently on interim suspension pursuant to a joint motion of the parties filed, in March 2012. In re: Hanchey, 12-0696 (La.4/4/12), 85 So.3d 78.
FORMAL CHARGES
Count I — The Overdraft Matter
In April 2009, the ODC received notice of a $2,540.76 overdraft of respondent’s client trust account. The next month, the ODC received notice of a second overdraft of respondent’s trust account in the amount of $572.02.
Respondent failed to file a written response to the ODC’s notice of the overdraft issues, necessitating the issuance of a subpoena to obtain his sworn statement. During the February 2010 sworn statement, respondent was unable to provide an explanation for the overdrafts.
Thereafter, respondent agreed to retain the services of auditor Ronnie White to reconcile his trust account and identify any potential issues with his handling of the account. However, respondent failed to cooperate with Mr. White, and a complete reconciliation of the trust account still has not been performed. Using the limited information the ODC was able to receive from other sources, Mr. White | ¡.prepared a preliminary audit report on July 26, 2011 showing unaccounted for client funds.
During the course of the ODC’s investigation, respondent was ineligible to practice law from November 30, 2009 until January 25, 2010 for failing to timely file his trust account disclosure statement. Despite his ineligibility, he continued to practice law.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15(a) (safekeeping property of clients or third persons), 5.5(a) (engaging in the unauthorized practice of law), 8.1(c) (failure to cooperate with the ODC in its investigation), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).
Count II — The Chiropractor Fraud Matter
While investigating respondent’s trust account records, the ODC discovered numerous trust account checks written to Juanita Boyd, who was an employee of Advanced Chiropractic Clinic in Baton Rouge, Louisiana. The checks, written over several years and referencing various clients, totaled more than $75,000.
The Louisiana State Police arrested Ms. Boyd, and in her statement to police, she claimed she was involved in a scheme with respondent and respondent’s runner, Patrick Green. In the scheme, Mr. Green would solicit personal injury cases on respondent’s behalf, and respondent would refer the clients to Advanced Chiropractic Clinic for treatment. Once a client’s case settled, respondent would send Ms. Boyd a check, made payable to her, in the amount of the bill that Advanced Chiropractic Clinic had submitted for the client’s treatment. Upon receipt of the check, Ms. Boyd would cash the check and distribute the funds equally among respondent, Mr. Green, and herself.
| ¡¡Respondent denied any knowledge of the scheme and has not yet been charged with a crime. Nevertheless, based on Ms. Boyd’s statement to police and other information, the ODC alleged that respondent *916 violated the following provisions of the Rules of Professional Conduct: Rules 7.4(a) (direct contact with prospective clients), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), and 8.4(c).
Count III — The Bell Matter
In September 2009, respondent settled Lester Bell’s personal injury matter for $4,141. However, he failed to disburse the settlement funds until August 2010, after Mr. Bell filed a disciplinary complaint against him. Respondent admitted that he had forgotten to disburse the funds. When Mr. Bell received the settlement documents, he claimed he never approved the settlement amount because he would not have accepted a settlement wherein he would not net any money for himself.
Respondent failed to submit a written response to the complaint, necessitating the issuance of a subpoena to obtain his sworn statement. During the January 2011 sworn statement, respondent claimed he had authority to endorse the settlement check on Mr. Bell’s behalf and deposited same into his trust account in December 2009. He also admitted that no payments were forwarded to Mr. Bell’s medical providers.
The ODC requested telephone logs from respondent to verify that he contacted Mr. Bell in prison about the settlement. However, respondent claimed there were no records, and the prison warden indicated no logs are kept to show inmate calls with their attorneys. The ODC also requested respondent’s trust account records to verify that the $2,540.60 in medical expenses had remained in the account since December 2009. In a March 2012 sworn statement to the ODC, respondent admitted that he withdrew all of the funds from his trust account and [4kept the cash in a safe in his home. However, he did not provide the ODC with any records to verify that he maintained possession of the portion of Mr. Bell’s settlement intended to pay him and his medical providers.
In connection with this investigation, the ODC also learned that respondent was ineligible to practice law beginning June 19, 2010. Nevertheless, he continued to practice law.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.15(a), 5.5(a), 8.1(c), and 8.4(c).
Count TV — The Martin Matter
In April 2009, Lisa Martin hired respondent to represent her in a slip and fall personal injury matter. Respondent timely filed a lawsuit on Ms. Martin’s behalf. However, respondent’s secretary failed to perfect service on the defendant via the long-arm statute, and Ms. Martin’s claim prescribed.
When the defendant refused to settle Ms. Martin’s prescribed claim for the previously offered $2,500 settlement, respondent offered to personally pay Ms. Martin the $2,500. However, he failed to advise her in writing that she should seek independent legal counsel concerning this settlement agreement. Furthermore, in paying this settlement amount, on August 4, 2011, respondent improperly wrote Ms. Martin a $500 check from his client trust account. Respondent admitted that he was having financial problems and wanted to keep funds out of his bank accounts. Thus, he deposited the $500 into his trust account when he needed to make the payment to Ms. Martin.
During respondent’s handling of this matter, he was also ineligible to practice law.
*917 |fiThe ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.8(h)(2) (a lawyer shall not settle a claim or potential claim for malpractice with an unrepresented client or former client unless that person is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel in connection therewith), 1.15(a), 5.3 (failure to properly supervise a non-lawyer assistant), and 5.5(a).
Count V — The Baker Physical Therapy Matter
In April 2009, respondent wrote to Baker Physical Therapy regarding the treatment of his client, Angelia Honora. Respondent included a $250 check and guaranteed payment of Ms. Honora’s balance out of any settlement or judgment obtained in her case. Respondent settled Ms. Honora’s claim. However, a year after the settlement, Ms. Honora’s bill at Baker Physical Therapy still had not been paid.
In January 2012, Baker Physical Therapy filed a disciplinary complaint against respondent. Respondent did not respond to notice of the complaint, necessitating the issuance of a subpoena to obtain his sworn statement. During his March 2012 sworn statement, respondent indicated he did not have a reason for his failure to respond to the complaint. He also indicated that the payment of Ms. Honora’s bill went unresolved because of a balance bill issue that needed to be addressed. Respondent paid Ms. Honora’s bill after the complaint was filed. However, during his sworn statement, he admitted that he was having personal financial problems. As such, he had removed all funds from his client trust account and kept said funds in a safe at his home. He also indicated that he would return the funds to the trust account “piecemeal” and pay bills for clients as necessary.
IfiThe ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15(a), 1.5(d) (failure to timely remit funds to a client or third person), 8.1(c), and 8.4(c).
Count VI — The Miscellaneous Matters
In connection with its other investigations into respondent’s conduct, the ODC discovered evidence of the following additional misconduct:
1. Respondent was declared ineligible to practice law beginning on June 19, 2010, but he continued to practice law;
2. Respondent was arrested for Driving While Intoxicated (“DWI”) on April 11, 2010;
3. As of February 29, 2012, respondent maintained a website that stated he “specialized” in personal injury, wrongful death, and medical malpractice law;
4. Respondent engaged in runner-based solicitation through his repeated financial dealings with Kevin Christenterry. Mr. Christenterry was respondent’s “ad man” and was repeatedly compensated for bringing respondent personal injury clients;
5. Respondent failed to promptly remit employee payroll withholdings to the IRS and/or the Louisiana Department of Revenue;
6. Due to his indebtedness to Advocate Financial, respondent obtained a loan from another financial institution and pledged a non-existent accident as collateral;
7. Respondent repeatedly failed to cooperate with numerous ongoing investigations by the ODC, including numerous failures to provide re *918 quested documents and responses to complaints filed against him; and _Jj8. Respondent continues to fail to update his address with the Louisiana State Bar Association (“LSBA”) after vacating his office more than a year ago.
Notice of the above issues was mailed to respondent on March 14, 2012. Nevertheless, respondent still has not provided a formal written response to any of these issues.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1(c) (failure to comply with annual registration requirements), 5.5(a), 7.2(c)(5) (a lawyer shall not state or imply that the lawyer is “certified,” “board certified,” an “expert,” or a “specialist”), 7.4(a), 8.1(c), 8.4(b), and 8.4(c).
Count VII — The Harrison Matter
Respondent represented Merlin Harrison in two personal injury matters. The first matter settled in July 2008. However, respondent failed to pay Mr. Harrison’s Baton Rouge General Medical Center bill in the amount of $11,809.05 from the settlement. Respondent wrote a check for $1,293 to pay Mr. Harrison’s LA Emergency & Trauma Specialists bill, but the check was voided the same day. There is no indication that these funds were paid from respondent’s client trust account to the appropriate party. The ODC could find no information concerning respondent’s role in the second personal injury matter.
Mr. Harrison filed a disciplinary complaint against respondent in January 2012. He complained that he was still receiving bills from Baton Rouge General Medical Center and could not reach respondent. He was also concerned that respondent had kept the money that was supposed to pay the hospital bill. He further indicated that the hospital bill had been turned over to a collection agency. Respondent received notice of the complaint on March 24, 2012 but failed to respond.
|sThe ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3,1.4,1.15(a), 8.1(c), and 8.4(c).
DISCIPLINARY PROCEEDINGS
In January 2013, the ODC filed formal charges against respondent. Respondent failed to answer the charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). The parties were given an opportunity to file written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.

Hearing Committee Report

After considering the ODC’s deemed admitted submission, the hearing committee determined that all of the factual allegations against respondent have been proven by clear and convincing evidence. The committee further found the following:
1. In Count I, respondent intentionally converted client funds and intentionally continued to practice law while he was ineligible;
2. In Count II, respondent engaged in fraudulent criminal behavior and runner based solicitation;
3. In Count III, respondent failed to communicate a settlement offer to Mr. Bell and converted the settlement funds to his own use while ineligible to practice law;
4. In Count IV, respondent failed to advise Ms. Martin of the need to seek independent counsel regarding *919 his allowing Ms. Martin’s claim to prescribe and trying to settle with her while still ineligible to practice law;
⅛⅜5. In Count V, respondent converted client funds to his own use;
6. In Count VI, respondent continued to practice law while ineligible, was arrested for DWI, maintained an improper website, engaged in runner based solicitation, failed to remit payroll withholdings to the IRS and the Louisiana Department of Revenue, pledged a non-existent accident to secure a loan, failed to cooperate with the ODC in its investigations, and failed to update his address with the LSBA; and
7. In Count VII, respondent converted Mr. Harrison’s funds to his own use.
Based on these factual findings, the committee determined that respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.1(c), 1.3, 1.4, 1.8(h)(2), 1.15(a), 1.15(d), 5.3, 5.5(a), 7.2(c)(5), 7.4(a), 8.1(c), 8.4(b), and 8.4(c).
The committee further determined that respondent intentionally and knowingly violated duties owed to his clients, the public, and the legal profession. He caused actual injury in the form of significant loss of client funds deemed converted. Based on the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined that the baseline sanction is disbarment.
The committee found the following aggravating factors: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law (admitted 1999). The committee did not address the presence of any mitigating factors.
After considering respondent’s conduct in light of the permanent disbarment guidelines set forth in Supreme Court Rule XIX, Appendix E, as well as this court’s prior jurisprudence addressing similar misconduct, the committee recommended he be permanently disbarred.
linNeither respondent nor the ODC filed an objection to the committee’s report and recommendation.

Disciplinary Board Recommendation

After review, the disciplinary board found that the factual allegations in the formal charges have been conclusively established. Based on these facts, the board determined respondent violated the Rules of Professional Conduct as follows:
1. Respondent violated Rule 1.1(c) by failing to update his primary registration address with the LSBA.
2. Respondent settled Mr. Bell’s claim without his knowledge or consent and then failed to disburse the settlement funds to Mr. Bell. He failed to communicate with Ms. Martin regarding the status of her personal injury matter and then failed to file suit on her behalf, causing her claim to prescribe. Finally, respondent failed to communicate with Mr. Harrison about either of his personal injury matters and failed altogether to take any steps in furtherance of the second personal injury matter. Accordingly, respondent violated Rules 1.3 and 1.4.
3. Respondent failed to advise Ms. Martin in writing to seek independent legal counsel regarding his allowing her claim to prescribe. Accordingly, respondent violated Rule 1.8(h)(2).
*920 4. During his March 2012 sworn statement, respondent admitted that, due to his personal financial issues, he withdrew all funds from his client trust account and placed the money in a safe in his home. Respondent claimed his intention was to return the funds to the trust account “piecemeal” as they were needed to make payments. However, respondent is unable to provide an accounting of these funds and is unable to verify that he is still in possession of these funds. In Louisiana State Bar Ass’n v. Krasnoff, 488 Soffdn 1002 (La.1986), this court rejected this so-called “black box defense” in attorney discipline cases, and respondent has failed to produce any evidence to overcome the presumption of conversion. Thus, respondent’s “safeguarding” of these funds in a safe in his home amounts to conversion. Additionally, respondent failed to pay Baker Physical Therapy for Ms. Honora’s treatment. Accordingly, respondent violated Rules 1.15(a) and 1.15(d).
5. Respondent negotiated and accepted settlements on behalf of Mr. Bell and Mr. Harrison without their express agreement. Respondent then failed to issue settlement funds to Mr. Bell or his medical providers and failed to issue settlement funds to Mr. Harrison’s medical providers. Accordingly, respondent violated Rule 3.2 (failure to make reasonable efforts to expedite litigation).
6. Respondent did not properly supervise his secretary in that she failed to forward the service copy for Ms. Martin’s lawsuit via certified mail as required by the long-arm statute. As a result, service was not perfected, and Ms. Martin’s case prescribed. Accordingly, respondent violated Rule 5.8.
7. Respondent has been ineligible to practice law since June 19, 2010, yet he continued to practice law. Accordingly, respondent violated Rule 5.5(a).
8. Respondent’s website indicated that he specialized in personal injury, wrongful death, and medical malpractice law, none of which are areas offered for certification by the Board of Legal Specialization. Accordingly, respondent violated Rule 7.2(c)(5).
9. The record contains statements of three individuals who claim respondent may have engaged in runner based solicitation through his use of Patrick Green and Kevin Christen-terry. However, these three statements do not amount to clear and convincing evidence that respondent engaged in runner |12based solicitation. The ODC did not depose any of these individuals. Nor did the ODC depose Mr. Green or Mr. Christenterry. Respondent testified that he was not involved with runner based solicitation of clients. As such, the evidence in the record does not rise to the level of clear and convincing evidence that respondent was involved in client solicitation in violation of Rule 7.4(a).[1]
10. Respondent failed to supply the ODC and his own auditor with financial records. He also failed to cooperate with the ODC in numerous investigations. Accordingly, respondent violated Rule 8.1(c).
*921 11. Respondent converted client funds when he liquidated his trust account and moved his clients’ funds to a safe in his home and when he failed to explain how overdrafts of his trust account occurred. Respondent was also arrested for DWI, failed to pay third party medical providers from client settlement funds, and failed to promptly remit employee payroll withholding to the IRS or Louisiana Department of Revenue. Additionally, respondent participated in a fraudulent scheme to defraud the owner of Advanced Chiropractic Clinic, misrepresented a client’s knowledge and agreement to the terms of a settlement, and made payments to a client whose case he allowed to prescribe because he did not have malpractice insurance. Accordingly, respondent violated Rules 8.4(b) and 8.4(c).
The board further determined that respondent knowingly and intentionally violated duties owed to his clients, the legal system, and the legal profession. After considering the ABA’s Standards for Imposing Lawyer Sanctions, the board determined that the baseline sanction is disbarment.
11sIn aggravation, the board found the following: a prior disciplinary record (an August 2009 admonition for engaging in a conflict of interest, failing to communicate with a client, and failing to timely remit funds to a third party), a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of the conduct, substantial experience in the practice of law, and indifference to making restitution. The board found no mitigating factors present.
After considering respondent’s conduct in light of the permanent disbarment guidelines set forth in Supreme Court Rule XIX, Appendix E, as well as this court’s prior jurisprudence addressing similar misconduct, the board recommended he be permanently disbarred. The board also recommended that respondent be ordered to make restitution to the clients whose funds he converted.
Neither respondent nor the ODC filed an objection to the board’s report and recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57.
In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal |, conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations. In re: Donnan, 01-3058 (La.1/10/03), 838 So.2d 715.
*922 The record in this deemed admitted matter indicates that respondent neglected legal matters, failed to communicate with clients, attempted to settle a malpractice claim without informing the client in writing to seek advice from outside counsel, practiced law while ineligible, participated in a scheme to defraud a third party medical provider, failed to pay third party medical providers from client settlements, mishandled his client trust account, resulting in conversion of client funds, and failed to cooperate with the ODC in its investigations. The disciplinary board’s factual findings and determinations of rule violations are not manifestly erroneous, except as follows: (1) the board found respondent failed to file suit on Ms. Martin’s behalf, causing her claim to prescribe; however, the record indicates that respondent filed a lawsuit on Ms. Martin’s behalf but failed to perfect service on the defendant, which caused Ms. Martin’s claim to prescribe. (2) The board also found respondent violated Rule 3.2 by failing to issue settlement funds to Mr. Bell or his medical providers and failing to issue settlement funds to Mr. Harrison’s medical providers; however, this rule violation was not alleged in the formal charges, and the misconduct is best addressed through the other rule violations found by the board.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 11fiSo.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent knowingly and intentionally violated duties owed to his clients, the public, and the legal profession. His conduct caused actual harm to his clients and the public. The baseline sanction for this type of misconduct is disbarment. We agree with the aggravating factors found by the board and agree that there are no mitigating factors.
We also agree that permanent disbarment is appropriate under Guideline 1 (repeated or multiple instances of intentional conversion of client funds with substantial harm) of the permanent disbarment guidelines. Respondent mishandled his client trust account, causing overdrafts to occur. He also failed to pay his clients’ third party medical providers, resulting in harm to his clients. Additionally, and most egregiously, respondent was involved in a scheme to defraud Advanced Chiropractic Clinic, which resulted in his clients’ chiropractor bills not being paid from their settlement funds. Respondent’s mishandling of his trust account and misuse of his clients’ settlement funds demonstrate that he poses a threat of harm to the public in the event he is permitted to resume practicing law. In order to protect the public, he must be permanently disbarred.
Accordingly, we will adopt the board’s recommendation and permanently disbar respondent. We will also order respondent to make restitution to the clients whose funds he converted.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of |1fiKevin Lenn Hanchey, Louisiana Bar Roll number 26320, be stricken from the *923 roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. It is further ordered that respondent shall make restitution to the clients whose funds he converted. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. The ODC did not object to the board’s finding regarding the lack of evidence of respondent’s involvement in runner based solicitation.